# IN THE SUPREME COURT, STATE OF WYOMING

# 2026 WY 75

APRIL TERM, A.D. 2026

July 8, 2026

AMY CROSS and CROSS RANCH LAND, LLC,

Appellants
(Plaintiffs),

v.

LISA ALBRIGHT,

Appellee
(Defendant).

S-25-0297

*Appeal from the District Court of Fremont County*
*The Honorable Jason M. Conder, Judge*

*Representing Appellant:*
Sky D. Phifer, Phifer Law Office, Lander, Wyoming. Argument by Mr. Phifer.

*Representing Appellee:*
Adam E. Phillips, Adam E. Phillips, Attorney at Law, P.C., Lander, Wyoming. Argument by Mr. Phillips.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL, Justice.**

[¶1]   Amy Cross and Cross Ranch (Cross) appeal the district court order denying competing motions to enforce a settlement agreement between Cross and Lisa Albright that purported to settle two cases related to their property disputes.  During the litigation, the parties participated in mediation and seemingly settled their disputes, creating and signing a document memorializing their understanding of their settlement agreement.  Cross argues that the district court erred when it denied both motions because it found that no enforceable agreement existed between the parties.  Finding no error, we affirm.

## ISSUES

[¶2]   Cross raises five issues, which we rephrase as three:

1) Did the district court violate Cross's due process rights when it denied the parties' competing motions to enforce the settlement agreement?

2) Did the district court err when it determined no enforceable agreement existed because the parties did not reach agreement on material terms?

3) Is Cross entitled to attorney's fees?

## FACTS

[¶3]   Cross and Ms. Albright are related by marriage and are neighboring landowners whose various properties lay in a scattered ownership pattern.  Multiple property disputes arose between the two including disputes centered around joint ownership of some property and access to the parties' lands and ditches.  Unable to resolve the disputes, Cross filed two complaints.  One complaint sought to establish an easement across Ms. Albright's land for access to ditches and some of Cross's properties.  The other complaint sought to partition land jointly owned by Cross, Ms. Albright, and others.  Cross also filed two petitions with the Board of Control.

[¶4]   While the litigation was pending, in an attempt to settle the matters, the parties participated in mediation.  The mediation resulted in a seemingly successful global settlement agreement of both court cases, the petitions pending before the Board of Control, and other issues between the parties.  The parties drafted and signed an email which outlined the terms of the agreement reached in mediation (Original Agreement).

[¶5]   The Original Agreement contained multiple terms to resolve the parties' various disputes, including exchanging some parcels to unify ownership and alleviate some of the access issues.  Relevant for purposes of this appeal, the Original Agreement stated:

1

- All parties will have access to ditches, headgates, and points of diversion so long as said access is along historic routes and/or ditches.

- All parties will have the right to maintain and clean ditches; however, no party shall cause damage to the ditch, adjacent property, or impede the property owner's use of the property.

- Albrights agree that no garbage, trash containers, old vehicles or machinery will be placed or stored on the 6 acre tract immediately west of the union pass road.

- Formal global settlement agreement will be drafted within 30 days by Albrights Attorney.

[¶6] When the parties attempted to further formalize the agreement as contemplated by the Original Agreement, disputes and disagreements arose. The majority of the disputes centered on how to effectuate the access to the ditches and the restrictions on the six-acre tract (visual storage restriction). Both parties filed motions seeking to enforce their interpretation of the settlement agreement. Cross asserted that a recordable easement was required to effectuate the ditch access, and a restrictive covenant was required to effectuate the visible storage restriction. Cross argued that an easement and restrictive covenant were inherent parts of the Original Agreement and were the only legal and logical way to adequately effectuate the agreement. Ms. Albright asserted an easement and a restrictive covenant went beyond the terms of the agreement and that Cross was attempting to insert two additional terms into the Original Agreement. Ms. Albright argued the Original Agreement did not require formal encumbrances on the property and was merely access permission along historic routes.

[¶7] The parties filed several other responses and replies making legal arguments and attaching exhibits and affidavits. Those filings included a request from each party for damages for the other party's failure to fulfill their obligations under the Original Agreement and attorney's fees. Cross also requested Rule 11 sanctions against Ms. Albright's counsel for failing to timely disclose a mortgage encumbering real property that was to be exchanged under other provisions of the Original Agreement.

[¶8] The district court heard oral argument on the parties' competing motions and allowed the parties to submit exhibits, but noted the hearing was not an evidentiary hearing. After taking the matter under advisement, the district court found the Original Agreement failed to specifically describe the manner in which to accomplish the two disputed provisions and the parties' obligations under the provisions. The court further found there was no meeting of the minds and the court could not enforce the Original Agreement because it could not discern the actual terms to be enforced or supply the terms of the agreement for the parties. The court also found that the provisions of the Original

2

Agreement related to access and visible storage restrictions were essential terms that could not be severed from the rest of the agreement. In sum, the court concluded there was no contract for the court to enforce. Accordingly, the court denied both parties' motions. The court also denied Cross's request for W.R.C.P. 11 sanctions.

## ISSUE 1

**Did the district court violate Cross's due process rights when it denied the parties' competing motions to enforce the settlement agreement?**

## STANDARD OF REVIEW

[¶9]    "The question of whether an individual was afforded due process is one of law, for which our review is de novo." *SP v. State*, 2025 WY 101, ¶ 22, 576 P.3d 603, 610–11 (Wyo. 2025) (quoting *Interest of VS*, 2018 WY 119, ¶ 25, 429 P.3d 14, 21 (Wyo. 2018)). The party asserting a due process violation has the burden of demonstrating both that she has a protected interest and that the interest has been affected in an impermissible way. *Id.* "The question is whether there has been a denial of fundamental fairness." *Id.* (quoting *In re L–MHB*, 2017 WY 110, ¶ 25, 401 P.3d 949, 958 (Wyo. 2017)).

## DISCUSSION

[¶10]  Cross argues that the district court violated her due process rights because it did not afford the parties notice and opportunity to be heard on the matter of whether there was an enforceable agreement. More specifically, Cross argues that because both sides sought to enforce the Original Agreement, neither party raised the issue of whether there was an enforceable contract and the parties were not heard on this matter. She asserts, "the district court violated the parties' due process right to notice and an opportunity to be heard when it sua sponte converted the issue from enforcing the settlement agreement to whether a contract had ever been formed due to lacking an essential term."

[¶11] Cross is correct that we have held due process concerns arise when a court, sua sponte, decides a matter on an issue outside those pleaded or raised by the parties without notice and opportunity to be heard. *See e.g. Union Pacific R.R. Co. v. Calballo Coal Co.*, 2011 WY 24, ¶¶ 31–33, 246 P.3d 867, 875–76 (Wyo. 2011); *Cornella v. City of Lander*, 2022 WY 9, ¶¶ 14–15, 502 P.3d 381, 384–385 (Wyo. 2022). There is a difference, however, between raising an issue sua sponte and not granting either party's requested relief. To be a violation of due process, the court has to raise a new issue or rule outside the scope of the issues presented by the parties without allowing the parties an opportunity to be heard on that issue. *See, e.g. Id.* Thus, to determine whether a due process violation has occurred, it is important to understand the issue raised and pleaded by the parties.

3

[¶12] In the present case, each party sought to enforce the Original Agreement. Each party provided written argument and affidavits to support their position about why the court should enforce the agreement in the way they requested. Within those filings, Ms. Albright referenced a "meeting of the minds" of the parties and attached Mr. Harold Albright's affidavit wherein it states the parties did not discuss easements or covenants. Cross made legal arguments that the terms of the agreement could only be accomplished by easement and a restrictive covenant. She provided her affidavit wherein she states there was an agreement for "access" to the ditches and she understood the importance of the access being a matter of public record and that the visual storage requirement was supposed to be a "forever thing." These filings show that because the parties greatly disputed what they agreed to, they raised a question of whether they actually agreed at all.

[¶13] After receiving and reviewing the multiple filings, the district court set a hearing for arguments on the parties' competing motions. At the hearing, both parties were allowed to present arguments and to introduce and explain exhibits. The district court explained its concern about whether a contract had been formed and heard the parties' arguments on that point. The district court had a discussion with the parties about the principles of contract law and whether a contract had even been formed. The district court specifically stated:

> We are having a discussion of was there a contract, what does the contract say, was it complied with. So in order to form a contract, there has to be an offer, acceptance and consideration. And acceptance requires a meeting of the minds, a mutual agreement. And so it's fundamental in Hornbook law.

The parties responded to the court's concerns and questions.

[¶14] Under the circumstances, the court did not "sua sponte" raise a new issue. Instead, the court decided the dispute the parties presented after hearing from the parties. Although each party argued there was a valid settlement agreement, the parties vigorously disagreed about how the agreement would be implemented. By their pleadings and their arguments, the parties asked the district court to interpret and enforce their purported agreement. An initial and inherent component of their requests is the question of whether a contract exists. *See Rialto Theatre, Inc. v. Commonwealth Theatres, Inc.*, 714 P.2d 328, 334 (Wyo. 1986) (noting that in some circumstances, when asked to rule on issues of breach of contract, an initial question is whether the contract is sufficiently definite to permit the court to determine the extent of the parties contractual duties). The parties' very dispute placed before the court the issue of whether there was a meeting of the minds such that the Original Agreement could be enforced. Each party asserted the agreement provided different terms which inherently encompasses the primary question of whether there was a meeting of the minds as to the terms of the agreement.

[¶15] Thus, in our view, the court resolved an issue placed before it. The resolution was an outcome not requested by either party, but the resolution was within the scope of issue

4

the parties placed before the court. The district court applied principles of contract formation to the arguments presented and concluded that mutual assent was lacking. It is not accurate to suggest that the parties were not aware whether a contract had been formed was at issue or that they didn't have the opportunity to be heard on the matter. Under the circumstances, we find no denial of fundamental fairness. The district court did not violate Cross's due process rights.

## ISSUE 2

## Did the district court err when it determined that no enforceable agreement existed because the parties did not reach agreement on material terms?

## STANDARD OF REVIEW

[¶16] When the terms of an agreement are unambiguous, its interpretation is a question of law which we review de novo. *Double Eagle Petroleum & Min. Corp. v. Questar Expl. & Prod. Co.*, 2003 WY 139, ¶ 7, 78 P.3d 679, 681 (Wyo. 2003) (citing *Examination Mgmt. Servs., Inc. v. Kirschbaum*, 927 P.2d 686, 689 (Wyo. 1996); *Union Pacific Res. Co. v. Texaco, Inc.*, 882 P.2d 212, 218–19 (Wyo. 1994)). Whether a contract has been formed depends on the intent of the parties and is a question of fact. *Hunter v. Reece*, 2011 WY 97, ¶ 13, 253 P.3d 497, 500 (Wyo. 2011) (quoting *Wyoming Sawmills, Inc. v. Morris*, 756 P.2d 774, 775 (Wyo. 1988)). In this instance, the district court found that no contract had been formed. We presume that finding is correct, and uphold it unless it is "inconsistent with the evidence, clearly erroneous, or contrary to the great weight of the evidence." *Id.* (quoting *Narans v. Paulsen*, 803 P.2d 358, 360 (Wyo. 1990)). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.* (citing *Fremont Homes, Inc. v. Elmer*, 974 P.2d 952, 958 (Wyo. 1999)).

## DISCUSSION

[¶17] "The existence of a contract requires a meeting of the minds of the parties to it." *Wyoming Sawmills, Inc.*, 756 P.2d at 775 (citing *Jackson Hole Builders v. Piros*, 654 P.2d 120, 122 (Wyo. 1982); *Crockett v. Lowther*, 549 P.2d 303, 311 (Wyo. 1976)). The contract in question in this instance is a settlement agreement. "A settlement agreement is a contract and, therefore, subject to the same legal principles that apply to any contract." *Simek v. Tate*, 2010 WY 65, ¶ 19, 231 P.3d 891, 898 (Wyo. 2010) *(quoting In re estate of Maycock*, 2001 WY 103, ¶ 10, 33 P.3d 1114, 1117 (Wyo. 2001)). The requirements to form a contract are well known. The basic elements are offer, acceptance, and consideration. *Kappes v. Rhodes*, 2022 WY 82, ¶ 18, 512 P.3d 31, 36 (Wyo. 2022) (citing *Bouwens v. Centrilift*, 974 P.2d 941, 946 (Wyo. 1999)). Importantly, there must be mutual assent to the same terms—a meeting of the minds about the material terms of the agreement. *Id.*

[¶18] While the mutual assent of the parties to the terms of a contract must be sufficiently definite to enable the court to ascertain what they are, each term does not have to be spelled out in minute detail. *Fuger v. Wagoner*, 2020 WY 154, ¶ 10, 478 P.3d 176, 181 (Wyo. 2020). The law does not favor the destruction of contracts on the ground of indefiniteness, and if it is feasible the court should construe the agreement so as to carry into effect the reasonable intent of the parties if that intent can be ascertained. *Id.* (citing *Mantle v. North Star Energy & Constr.*, 2019 WY 29, ¶ 62, 437 P.3d 758, 782 (Wyo. 2019)). "An agreement may be fleshed out by usages to which the parties are subject, by a course of dealing between the parties prior to their agreement, or by a course of performance between them after their agreement." *Id.* (citing *Mantle*, ¶ 63, 437 P.3d at 782 (quoting I E. Allan Farnsworth, *Farnsworth on Contracts* § 3.28, at 357 (1990)).

[¶19] Even so, "the essentials of the contract must have been agreed upon and be ascertainable." *Id.* "Unless the essential terms of the agreement have been defined with certainty, no contract exists for a court to enforce." *Fowler v. Fowler*, 933 P.2d 502, 505 (Wyo. 1997). If the terms of a contract are not sufficiently definite to permit the court to determine the extent of the parties obligations, the court lacks the information necessary to rule on the parties' obligation and breach of contract claims. *Rialto Theatre*, 714 P.2d at 334. If mutual assent to essential terms is lacking, the parties may have simply made an agreement to agree in the future. *Id.* "While the parties to such an agreement may perceive that a binding obligation is created by this type of agreement, the court is incapable of ordering enforcement as it cannot supply the terms of agreement for the parties." *Id.* (citing *Adobe Oil & Gas Corp. v. Getter Trucking, Inc.*, 676 P.2d 560, 562 (Wyo. 1984)). For there to be an agreement for the court to enforce, the essential terms of a future agreement must be defined with reasonable certainty. *Id.* at 334–335 (citations omitted).

[¶20] As recognized by the district court, this was the crux of the matter in this case. The parties asserted they had a binding agreement but disputed the terms of the agreement. Looking at the language of the Original Agreement to determine how ditch access and the visual storage restriction were to be effectuated was of little help. As the district court recognized, "the parties signed an email outlining the general agreed-upon terms, and that document comprises the entirety of the alleged settlement agreement." The Original Agreement did not contain the words "easement" or "restrictive covenant." Indeed, the Original Agreement contained no terms specifying how access and the visual storage restriction were to be implemented. Those terms simply cannot be ascertained from the Original Agreement itself.

[¶21] As noted above, an agreement may be fleshed out by a course of dealing between the parties prior to their agreement and a course of performance after their agreement. *Fuger*, ¶ 10, 478 P.3d at 181. Before the Original Agreement was entered, access was a point of disagreement and led to one of Cross's complaints, wherein she specifically requested an easement. Ms. Albright contested that action. Almost immediately after the Original Agreement was signed and the parties attempted to draft a more formal settlement

agreement, there were disputes. Ms. Albright strenuously objected to Cross's attempts to draft an easement and restrictive covenant and asserted she had never agreed to those terms. For her part, Cross asserted that the provisions of the Original Agreement could only be accomplished by an easement and a restrictive covenant.

[¶22] The course of dealing before and after the Original Agreement offers no further insight into the parties' intent regarding implementation but does show they disagreed about what they had agreed to in mediation. Although an evidentiary hearing may have been helpful to further understand the parties' intent when they entered the Original Agreement, it was nevertheless clear from the filings there was not a meeting of the minds between the parties regarding implementation. The court had before it the Original Agreement, the proposed final agreement, Cross's proposed easement and restrictive covenant, an affidavit from Cross, and an affidavit from Mr. Albright, which demonstrated a lack of agreement.

[¶23] Given the disagreement and that the Original Agreement included a provision that a formal global settlement would be drafted within 30 days, it appears at most the parties had an agreement to agree at some point in the future. Thus, the question becomes whether the terms of the future agreement were defined with reasonable certainty to form an enforceable contract. *See Rialto Theatre*, 714 P.2d 334–35. Here they were not.

[¶24] As discussed, the Original Agreement was devoid of specifics regarding how to accomplish the disputed provisions. It failed to define the essential terms of the future agreement with reasonable certainty. *Id.* at 334–35. The means to accomplish the access and the visual storage restriction were essential components of the agreement because without them the court could not determine the parties' obligations and responsibilities. The court could not determine if there was a breach, or how to remedy any alleged breach. *Fuger*, ¶ 9, 478 P.3d at 181 (citing *Simek*, ¶ 21, 231 P.3d at 899). The court's finding that the failure to specify how to accomplish the access and restriction were essential terms and the parties had not agreed on those terms was not clearly erroneous.

[¶25] Cross argued to the district court and to this Court on appeal that under the law, the contemplated access and visible storage restriction could only be accomplished by an easement and a restrictive covenant. Hence, Cross argued that terms specifying how access and the visual storage restriction were not "essential" because they could only be accomplished one way. She, therefore, argues the agreement was sufficiently detailed and the intent of the parties can be ascertained. We disagree.

[¶26] As we have discussed in previous cases, there are multiple ways for a party to have a nonpossessory right or privilege to use another party's property. For example, the party may have an easement, a license, or a profit. *Upper Wagon Box, LLC v. Box Hanging Three Ranch Ltd. P'ship*, 2022 WY 155, ¶¶ 11–14, 521 P.3d 551, 558 (Wyo. 2022); *Seven Lakes Dev. Co. v. Maxson*, 2006 WY 136, ¶¶ 11–13, 144 P.3d 1239, 1245–1246 (Wyo.

2006). Relevant for this case are easements and licenses. "An easement is a nonpossessory interest in land that entitles the easement holder to a right of limited use in another's property." *Upper Wagon Box*, ¶ 11, 521 P.3d at 558 (citations omitted). "A license is a privilege to do certain acts of a temporary character on the land of another which is revocable at the will of a licensor unless a definite time has been specified, or unless it is coupled with an interest." *Seven Lakes Dev. Co.*, ¶ 11, 144 P.3d at 1245 (citing *Coumas v. Transcontinental Garage*, 230 P.2d 748, 758 (Wyo. 1951)). A license does not give any interest in the land, but means that one who possesses a license is not a trespasser. *Id.* (citing *Anthony Wilkinson Live Stock Co. v. McIlquam*, 83 P. 364, 369 (Wyo. 1905); *Metcalf v. Hart*, 527, 27 P. 900, 905 (Wyo. 1891)). Thus, the contemplated access could have been accomplished by any of these means—an easement, a license, or a license coupled with an interest.

[¶27] Even if we were to agree with Cross that the access could have only been accomplished by an easement, uncertainty remains. Easements may be appurtenant or in gross. An easement is appurtenant "when the easement is created to benefit and does benefit the possessor of the land in his use of the land." *Upper Wagon Box*, ¶ 12, 521 P.3d at 558 (citing *Gayhart Tr. of Tiphany L. Gayhart Living Tr. dated Oct. 1, 2008 v. Corsi*, 2020 WY 58, ¶ 20, 462 P.3d 904, 910 (Wyo. 2020)). An appurtenant easement runs with the land and passes automatically to successive owners or occupiers of the land or the interest in land with which the right or obligation runs. *Id.*; *Seven Lakes Dev. Co.*, ¶ 11, 144 P.3d at 1245. "An easement is in gross when the easement is created to benefit someone personally, and not as a possessor of any particular land." *Upper Wagon Box*, ¶ 14, 521 P.3d at 558 (citing *Hasvold v. Park Cnty. Sch. Dist. No. 6*, 2002 WY 65, ¶ 14, 45 P.3d 635, 638 (Wyo. 2002)). Easements in gross have no dominant estate attached and are considered personal to their holder. *Id.* (citations omitted). Under these circumstances, there is no way to ascertain what type of easement would have been required. The courts cannot supply these terms for the parties. *Rialto Theatre*, 714 P.2d at 334. Accordingly, we reject Cross's argument.

[¶28] A similar analysis applies to Cross's asserted restrictive covenant. A restrictive covenant is "a private agreement . . . that restricts the use or occupancy of real property[.]" *Reichert v. Daugherty*, 2018 WY 103, ¶ 12, 425 P.3d 990, 994 (Wyo. 2018) (quoting *Sonnett v. First Am. Title Ins. Co.*, 2013 WY 106, ¶ 11, 309 P.3d 799, 805 (Wyo. 2013)). A restrictive covenant that runs with the land is one that "inures to the benefit of, or must be fulfilled by, whatever party holds the land at the time when fulfillment is due." *Id.* at ¶ 13 (quoting *Jacobs Ranch Coal Co. v. Thunder Basin Coal Co., LLC*, 2008 WY 101, ¶ 12 n.4, 191 P.3d 125, 130 n.4 (Wyo. 2008)). A party seeking to establish a covenant runs with the land must demonstrate: "1) the original covenant is enforceable; 2) the parties to the original covenant intended that the covenant run with the land; 3) the covenant touches and concerns the land; and 4) there is privity of estate between the parties to the dispute." *Id.* (citations omitted).

[¶29]  Among other things, in this instance, the second factor is problematic for Cross.  It is not clear from the Original Agreement whether this obligation was intended to run with the land or was simply a personal obligation of Ms. Albright.  There was a complete absence of language expressing the parties' intent that the visual storage restriction ran with the land.  The Original Agreement contained provisions related to land and transfers of land, but it also contained personal obligations.  For instances, it provided, "All harassment and disparaging remarks between the parties will cease."  Thus, it is possible the visual storage restriction was intended to run with land, but it is equally possible it was not intended to run with the land and was a personal obligation.[1]  Therefore, we must reject Cross's argument.

[¶30]  The district court did not err determining there was no agreement to enforce and denying both parties motions to enforce the Original Agreement.

## ISSUE 3

**Is Cross entitled to attorney's fees?**

### STANDARD OF REVIEW

[¶31]  We review the denial of an award for attorney fees for an abuse of discretion. *Stafford v. JHL, Inc.*, 2008 WY 128, ¶ 14, 194 P.3d 315, 318 (Wyo. 2008) (citing *Mueller v. Zimmer*, 2007 WY 195, ¶ 11, 173 P.3d 361, 364 (Wyo. 2007)).  A court abuses its discretion if it acts in a manner which exceeds the bounds of reason under the circumstances.  *Id.*  The ultimate question is whether the court could reasonably conclude as it did.  *Id.*

### DISCUSSION

[¶32]  Cross asserts she is entitled to attorney's fees as a matter of law because the parties have a contract that provided for attorney's fees.  There are multiple problems with this argument.

[¶33]  First, Cross did not make argument regarding attorney's fee below.  While each party's filings related to their requests for enforcement of the settlement agreement asked for the award of reasonable attorney's fees in the prayer for relief, no further argument was made.  The hearing included no discussion of attorney's fees and the order included no mention of it, possibly because neither party "prevailed" below.  Instead, the order Cross appealed ruled on Rule 11 sanctions not attorney's fees.

---

[1] These two conflicting possibilities again highlight the lack of mutual assent between the parties regarding the Original Agreement's essential terms.

[¶34]  Generally, we will not consider an issue raised for the first time on appeal unless it is jurisdictional or "of such a fundamental nature that it must be considered." *Williams v. Gage*, 2026 WY 30, ¶ 27, 585 P.3d 183, 191 (Wyo. 2026) (citing *Sharpe v. Evans*, 2025 WY 70, ¶ 14, 570 P.3d 731, 736 (Wyo. 2025)).  "We follow this rule because it is unfair to reverse a ruling of a trial court for reasons that were not presented to it, whether it be legal theories or issues never formally raised in the pleadings nor argued to the trial court." *Id.* (quoting *Stevens v. Governing Body of Town of Saratoga*, 2025 WY 35, ¶ 62, 566 P.3d 166, 180 (Wyo. 2025)) (citation modified).  Cross's argument is neither jurisdictional nor fundamental; thus, we decline to consider it for the first time on appeal.

[¶35]  Furthermore, we have consistently held that Wyoming follows the American Rule which states that each party is responsible for her own attorney's fees in the absence of an express contractual or statutory provision to the contrary.  *Stafford*, ¶ 16, 194 P.3d at 318 (citing *Dewey v. Wentland*, 2002 WY 2, ¶ 50, 38 P.3d 402, 420 (Wyo. 2002)).  The parties do not have an agreement as to attorney's fees.  The proposed final agreement drafted to implement the Original Agreement included a provision for attorney's fees, but that agreement was never signed and the district court and now this Court have found no enforceable agreement existed.  Accordingly, Cross is not entitled to attorney's fees.

## CONCLUSION

[¶36]  Affirmed.